Who's going to argue? Ms. Braga, you're going to introduce? Your Honor, Stephen Braga, I'm the head of the Appellate Litigation Clinic at the University of Minnesota. I need the one after the notebook. All right, Ms. Braga, welcome, and why don't you approach the bench and make your argument. My most important question is did you watch the game? Which one? The championship game. Of course. All right. Who won? Virginia. Of course. And they were playing who? Duke. An inconsequential team. All right, you may proceed. May it please the Court. Good morning, Your Honors. My name is Corrine Mao, and I represent the appellant in today's case, Mr. Torrance Jones. Three years of a man's life is not a trifling thing. That was this court's observation in United States v. Ford. Yet here, the consequence of the miscarriage of justice is nearly double that time frame, five years and eight months. This court should reverse the lower court's determination that Mr. Jones' petition is untimely and remand for Mr. Jones' petition timely for two reasons. First, because the Supreme Court's recent decision in the Timeliness the only issue that we consider here? Yes, Your Honor. It is the decision that the district court issued and the issue on the certificate of appealability. So we find it's unnecessarily successive, nonetheless, that that's an alternative basis we can consider. Your Honor, this court may consider that issue. However, with regard to the 2012 petition, the issue of second or successive was, as I stated, not within the certificate of appealability. In addition, the district court below assumed without deciding that this petition was not successive. And therefore, the issue has not been fully briefed. And if Your Honors would like additional briefing on that or a remand to the district court for consideration on those grounds, we would be happy to do so. However, with respect to the timeliness issue... Let me see if I can't get to the nub of this then. It's untimely by statute. It's about three years late. But if you can get relief from McQuiggan on actual innocence, then you have a new rule. It was within, well, the November 6th one was within the timing, right? That is correct, Your Honor. And so you rise and fall with the application of McQuiggan? That is correct, Your Honor. In this case, we are considering whether McQuiggan and most notably the framework that the Supreme Court considered in determining an actual innocence exception to the statute of limitations. Let me take this one step further, and this narrows it down a little bit more. McQuiggan involved actual innocence on conviction. And your argument is that you would like to apply McQuiggan based on innocence with respect to sentence, not on the conviction. Yes, Judge Niemeyer. And we have three cases where we have used the innocence on sentence to forego procedural defaults. Yes, that is correct. But we've never extended a statute, a congressionally made statute with sentencing innocence. Is  That is correct, Your Honor. So what you're asking for is basically an extension of McQuiggan, which deals with guilt innocence, to sentencing innocence. Yes, Judge Niemeyer. McQuiggan, although as you noted, does deal with an actual innocence of conviction, we believe the framework of that case can be applied to this circumstance. Namely, in McQuiggan, the Supreme Court recognized that federal courts have a traditional, equitable role to play in habeas proceedings. That is not circumvented by AEDPA in the actual innocence context. And in this court, the actual innocence of sentence has been recognized in the cases of Maybeck, Mikulahunas. Do you claim an actual innocence in both of these underlying cases? One of the vacators was vacated for actual innocence. The other was not. You're not claiming actual innocence then in what, the 2004 one? The 2000 vacator. That's the one you say was actual innocence? No, I'm sorry, Your Honor, I misunderstood. The 1994 conviction was vacated in 2008 on factual innocence. That's the one you say is actual innocence? That's correct, Your Honor. What's your basis for saying that? The Florida Supreme Court vacated on the grounds that there was insufficient evidence in that claim that those cases are out. You get the benefit of the fact that they're out. But the only way those two cases affect the drug conviction in this case is to reduce the sentence. You can't claim actual innocence in the drug conviction. You don't, right? That is correct, Your Honor. The question is whether if you have innocence in this case with respect to part of the sentence, whether McQuiggan gives you that benefit to change the deadline created by Congress. Precisely, Judge Niemeyer. Okay, so it doesn't matter whether the Florida was innocent or not. They're out. They're legitimately out. Florida has knocked out those antecedent crimes, and you want the benefit of them. They knocked those out back in 2008. Correct, Your Honor. Okay. And the implication of those vacators is that Mr. Jones' criminal history category falls from a criminal history category three to a criminal history category one, and that is a difference of nearly six years on his sentence. I thought the sentencing ranges actually overlapped a little. They do, Your Honor. The advisory ranges overlap. That is correct, Judge King. So he couldn't get the same sentence. That is correct, Your Honor. It doesn't necessarily give him six years off. That is true. However, in Maybach, which is this court's seminal case with respect to actual innocence of sentence cases, this court recognized and granted relief in that case despite the fact that there was a 20-month overlap in the original and revised sentencing guideline ranges. And so therefore, this court's decision in Maybach forecloses the line of argument that the overlaps do, in fact, are dispositive. But following Maybach and McAlunas, in reference to Maybach, it set out Maybach as allowing this limited category of actual innocence of sentence claims only for career offender offenses, and it was very specific in saying that otherwise the actual innocence exception would swallow up the general rule. So why wouldn't McAlunas control this case? You are correct, Judge Agee, in that that is what McAlunas stated. However, we must recognize that the actual, excuse me, the other habitual offender provision as interpreted in McAlunas and as applied in Mr. Jones' case only affects the criminal history category. And therefore, that takes out the whole line of cases. Tell us how there's a habitual offender provision at play here. Your Honor, Mr. Jones was sentenced under Sentencing Guideline 4A1.1, which increases the criminal history points on the basis of prior convictions. And therefore, in that respect, the purpose and effect of these guideline provisions all seek to increase a defendant's… when they proceed under the other guidelines that discuss habitual offender. I mean, it seems like to me this would apply in any case where there's a prior conviction. Well, Your Honor, it is true that in any sentencing, you must take into account, the sentencing judge would take into account both the base offense and criminal history. However, as recognized and as were the facts in McAlunas, if a defendant is seeking a reduction in his base offense level, that would not qualify. And that is not what Mr. Jones is seeking. Mr. Jones' case, in contrast, deals only with the criminal history category. Well, that's my point there. Tell us why the position that you advocate here wouldn't affect every criminal case where there's a sentencing consideration under the guidelines, even post-Booker. If there's one conviction, it seems like to me that your case would expand McQuiggan to cover them all. Your Honor, with respect to the floodgates concern… How is that true? No, Your Honor, it is not. For two reasons. First, because there still must be an underlying vacater on factual innocence grounds. And this is an exceptionally rare case, as was recognized in McQuiggan, by the Supreme Court in McQuiggan. And because the actual innocence of sentence, as recognized by this court, requires a factual innocence vacater, that severely limits the number of cases that this rule or extension would impact. You're linking the two sentence innocents from conviction innocence, I mean offense innocence. And the Supreme Court in McQuiggan seems to suggest that the whole basis for that is that we don't want to have somebody who's innocent in jail. And they apply it on the basis that a jury would not have convicted them. And they don't extend that, I mean, you have a statutory exception, a limitation imposed by Congress. And when a court comes to extend that on the basis of McQuiggan, it seems to me we can't go any further than McQuiggan goes. And the justification of McQuiggan was the incarceration of innocent people. Yes, Your Honor. And which is a far cry. As a matter of fact, I think it was Justice Scalia, didn't he point out the distinction between that and procedural defaults where we have applied the innocence of sentence. The wrong sentence, basically. That's what it comes down to. Correct, Judge Niemeyer. However, in either case with respect to either innocence of conviction or innocence of sentence as recognized by this court's precedence, there is an underlying actual innocence, a factual innocence case. And in that respect, the line between what was recognized in McQuiggan and Mr. Jones' case becomes to become, it diminishes. Because Mr. Jones' underlying vacator was vacated on factual innocence grounds, the imperative is there in both cases. What factual innocence? Your Honor, the 2008 vacator was granted on the basis of an affidavit indicating that Mr. Jones... But that has nothing to do with it. Those cases are out for whatever reason. That doesn't get rid of his... He was convicted of drug trafficking in 1996. That's a serious federal offense. There's no vacator for that. He's in jail properly convicted by a jury. The only issue in this case is his sentence problem. That's true, Your Honor. Based on the vacation of two convictions in Florida, that enhanced his sentence. Now, when you knock out those Florida convictions, then you're going to get a lesser sentence in the drug conviction case. But we don't have any actual innocence of fact on the guilt here. That is true, Your Honor. However, in the Supreme Court case of Dave versus McDonough that came out in 2006, the Supreme Court recognized that procedural bars, including procedural default, as well as statute of limitations, should be treated similarly. And that is because they are all non... One's created by Congress and the other's created by the courts. Congress set the one-year limitation statute in the statute, whereas the procedural default is court-made. That is true, Your Honor, and that is precisely where... And we can give and take away, right? Yes, Your Honor. That is precisely where McQuiggan does the work and comes into play in this case. Because in McQuiggan, the Supreme Court recognized the traditional equitable role of federal In this court, the actual innocence of sentence claim was recognized even before EDPA was passed. In fact, it goes back and has not been questioned in this court. And therefore, because Mr. Jones' claim is an actual innocence of sentence claim, it falls squarely within the authority of this court. I thought you had made... I may be wrong, but I thought you had made a separate argument apart from what we've discussed so far, where, in essence, you argued that there should be an equitable tolling that related to a prior habeas petition. Is that... Did I make that up, or is that part of... Is that an additional argument that you made? Yes, Judge Agee. In the informal briefs filed before this court by Mr. Jones when he was pro se, he did argue equitable tolling. Well, do you? Your Honor, we did not brief the issue in our opening briefs. And for that reason, we do not argue it today. However, if Your Honors would like supplemental briefing on that issue, we'd be happy. Your Honors, not only can McQuiggan's framework be applied to apply the actual innocence extension in Mr. Jones' case, he fits within this court's actual innocence of sentence. Is there a qualitative difference between someone who's in jail for a crime he did not commit and a person who is in jail for a sentence longer than he should have been? In name only, Your Honor. In name only? Yes, and that is because... I mean, in the second case, the man is in jail because he committed a crime, whereas in the first case, he's innocent and shouldn't be in jail. Now, sure, he's innocent of part of his sentence, but it seems to me that that is not as serious a problem as what the Supreme Court identified in McQuiggan, is that we shouldn't have these innocent people in jail. Well, that is correct, Your Honor. However, we're not asking that Mr. Jones be released on the basis of his underlying federal conviction. He will do the time for the crime that he committed, and that is unequivocal. Well, I understand your argument that he's over sentence, he's serving too long, but he had a way to solve that, and the statute gave him a way to solve that, and he didn't avail himself of the time periods given by the statute. So now the question is, do we go back and relieve him of that bill because he's serving too long of sentence? Now, the Supreme Court in McQuiggan says we will relieve him of a time period if he shouldn't have been in jail at all. I think that's a difference, don't you think? Yes, Your Honor. However, this court, in announcing the actual innocence of sentence exception in Maybach, recognized that that jurisprudence flows directly from Sawyer, which is the Supreme Court case. And in that instance, because actual innocence of sentence claims are cut from the same cloth as of the type that was recognized in McQuiggan, that is why actual innocence of sentence does apply here. All right. Thank you very much. Thank you, Your Honor. You've reserved some rebuttal. We'll see you. Yes, Your Honor. All right. Ms. Shaw. May it please the Court. Good morning. I'm Shalika Shaw here on behalf of the United States. The defendant here has talked about innocence a whole lot before this court. Let's be clear. This defendant is not innocent. He is a man who distributed over 100 kilos of crack and cocaine. He was properly and lawfully sentenced as such. Now, Section 2255 only provides defendants a limited ability to attack their conviction in sentence. There are three specific statutory limitations encompassed in Section 2255. First, it limits the subject matter on what is cognizable on a Section 2255 proceeding.  And third, it bars second or successive motions except in limited circumstances where the defendant has presented newly discovered evidence that demonstrates by clear and convincing evidence that a reasonable fact finder would not have found him guilty of the crime, of the offensive conviction, or where the defendant presents a new rule of constitutional law that applies to his conviction and has been retroactively applicable to his conviction. He fails all three of these statutory limitations. In March of 2012, he filed a Section 2255 motion. This was his fifth Section 2255 motion. It was also his fifth time since the November 2008 vacatur of his 1994 conviction, the fifth time raising that claim before the district court. And all five of those claims were denied. All five of those claims came before the Fourth Circuit, and the district court was affirmed in every one of those cases. The defendant's petition is successive. And we point out that the court may affirm for any reason a firm that is supported by the record. This petition was successive, and the district court should have dismissed it for lack of jurisdiction. This petition is untimely. Under Johnson, the Supreme Court told us that he had one year from the state court vacatur to file a timely motion based on that vacatur. His 1994 conviction was vacated in November of 2008. He did not file this motion until March of 2012. This motion is not timely, and there is no exception to that. Finally, his claim is nothing more than a quintessential guidelines application claim. He is challenging his criminal history category. He is trying to be sentenced with a revised advisory guideline range that would result in overlapping... He did have facts that revised his guideline. That was the vacation of the two Florida convictions. Yes, Your Honor. And your argument, I gather, that happened in 2008. And I gather your argument is that he should have taken advantage of that promptly. Well, and I will point out to the court that he did take advantage of that within one year. He did file what we acknowledge was a timely motion in November of 2009 based on that night 2008 vacatur. But that motion was successive. And there has been no articulation from the Supreme Court... That was his Rule 60B motion? Well, he filed two motions. So, November of 2009, he filed a motion in the Southern District of Illinois. It was a habeas corpus motion. And that motion was... 2241. It was a 2241. And that was transferred... Are you counting that as a 2255 when you say he's filed five of them? Well, it was ultimately treated as a 2255. It transferred to the Eastern District of Virginia. Eastern District of Virginia construed that as a 2255. And that was the time he first claimed that he was actually innocent. Yes, and that was the only timely motion that he filed claiming this... offense that was included in his criminal history category. But that motion was successive. He filed a Section 2255 motion in 2001, within a year of when his state court conviction was final. In that motion, he raised eight claims for relief. He didn't raise this claim. Well, he couldn't have raised it then. Yes, Your Honor. Well, arguably, he couldn't have raised it. He didn't have the state court vacatur in hand at that point. He filed one in October of 2000. Yes. And there, he still had the Florida convictions, and his sentence was appropriate. Yes, at that point... In 2008, he got rid of the Florida convictions, and so that impacted his sentence in this case. And he filed, within a year of that, he filed a 2241. Yes, Your Honor, that's correct. But in that, in 2000 is when he began, he... So that one was timely. His 2001 motion? No, the 2009. It's arguably timely. It was filed within one year of the state court vacatur. But again, as we raised an argument in our brief, that under Johnson, he also was required to diligently pursue the state court vacatur. Due diligence is required under Johnson. Exactly. If he raised that, you say it wasn't diligent? Yes, Your Honor. We do argue that it was not diligent. Well, he filed it within a year. I'm sorry, a year of what? Well, he filed it within a year that his conviction was vacated in Florida. But Johnson requires diligence in pursuing the state court vacatur. And they measure that date of diligence from the date of his federal judgment. His federal judgment was in 1997. So you're saying that due diligence doesn't come into play from the time that his underlying conviction is vacated down here in Florida? No. Johnson imposed two requirements to treat it as timely. One, it had to be filed within one year of the state court vacatur, under 2255F4. But it also required that the defendant pursue the state court vacatur diligently. Why did he initiate the procedures to get rid of the state court? He filed both habeas petitions on the 1990 and 1994 convictions in 2001, which was four years after his federal judgment in 1997. In Johnson, we dealt with less time. They had filed, I think it was about three and a half years. I'm missing the sequence here. He got a vacatur in Florida. The last one was November 7, 2008. Yes, Your Honor. When did he initiate that proceeding? Speaking to the 1994 conviction, he filed a motion in March of 2001, seeking to vacate that conviction, which was four years after. That motion was actually denied in November of 2001. That motion had included the affidavit of James Moore that the defendant spoke to today. That motion was denied in November of 2001. Then in March of 2008, he refiled a habeas petition challenging that 1994 conviction. Now, just to have the timeline right, that's 11 years after his federal judgment. In that, he included the Moore affidavit and included nearly an affidavit from his trial attorney saying that he hadn't advised him as to the actual charges he was facing at the time of the plea. Now, with those two affidavits, the Florida court then vacated the conviction in November of 2008. So, arguably, he didn't file his successive motion until 11 years after his federal judgment. So, while he did come in under 2255F4, we do maintain that under Johnson, there's a question as to whether or not he was diligent in pursuing his state court safety. I understand the argument now. Okay. Now, that petition, that November of 2009 petition, was dismissed as successive. The defendant appealed that to the Fourth Circuit, and the Fourth Circuit affirmed that decision, finding that he did not fall into either of the limited and narrow exceptions in 2255H. A couple years later, he then again files a 2255 motion asking the court again to consider the 2008 vacatur of his 1994 conviction and to resentence him with a lower advisory guideline range. All these things are pro se? Not every motion he filed was pro se, but his 2009 motion was pro se, and his 2012 motion was pro se. He did have lawyers at intermittent times throughout his various habeas filing, or post-conviction filings. After he got his relief down in Florida, everything was pro se? He had representation in Florida. No, but after Florida. Federal court, everything was pro se. Since 2008. In June of 2009, he filed two motions with the assistance of an attorney in the Eastern District of North Carolina. Those two motions were 3582C, and he also filed a motion to correct the PSR based on the 2008 vacatur. They ended up withdrawing that motion to correct the PSR and only pursued the 3582C. He did have counsel on those. It sounds like he's pretty diligent. I would argue that he's very persistent, Your Honor. He has been persistent. Since 2008 to 2012, the 2012 motion was his fifth motion. What's his sentence for the drug trafficking in this case? 360 months, Your Honor. 30 years? 30 years. Now, I do want to address something that Judge Niemeyer said. Even if this thing goes back to Category 1, he still can get 360 months. Yes, Your Honor. 360 months would still be waived. But he says that's not relevant. We argue that it is relevant, because when we're looking at what... You do say it's relevant. Yes. That the guideline ranges overlap. But the guideline ranges overlap and include the sentence that he did receive. And if he were to reduce to Category 1, they would overlap. We argue he's only entitled, for purposes of this appeal, to consider a reduction down to a criminal history, too. What would the argument be that it's relevant? Is it that he doesn't have sentencing innocence, because his sentence still falls within the guideline range? Yes, Your Honor. Looking at what's a cognizable claim for relief, when the courts have looked to what constitutes a fundamental miscarriage of justice, such that it would be a cognizable claim for relief, a guidelines challenge does not rise to that level. And the courts have said, especially in the case where the defendant could have received the exact same sentence, even if this were remanded back to the district court. I thought your position was that, as far as these actual innocence of sentence claims was, in effect, there's a bright-line rule, at least in the Fourth Circuit, that if it doesn't involve a career offender provision or a habitual offender provision, that's it. Yes, Your Honor. That is our position. In all of the cases in the United States Supreme Court, in all of the cases in the Fourth Circuit— You're shooting with a lot of arrows. Yes, Your Honor. We are. We're shooting with a lot of arrows. First, starting with McQuiggan, they talk about actual innocence of the offense. Now, they also talk about an actual innocence of sentence. Now, which offense are you talking about, actual innocence? In McQuiggan, as applied to this case, that means the defendant would have to say that he is innocent of the drug trafficking convictions. The one he's in federal prison on. Exactly. And they make no claims. The fact that he's actually innocent of the Florida offenses doesn't help him out. No, Your Honor. It does not have—McQuiggan has no applicability to that. However, I do think that the dissent in McQuiggan is very telling. McQuiggan was the first time that the Supreme Court drew an exception to the statutory limitations under 2255. And they drew it for a very serious situation where someone who was in prison were actually innocent of the crime. The dissent strongly disagreed with that approach, but it's very telling that in the situation where a defendant who is not innocent of his crime— and makes no claim to be innocent of the actual crime for which he was convicted— was properly and lawfully sentenced, his sentence is still within the advisory guideline range that he would receive if this case were remanded. For the Supreme Court to take that—for this court to take that step and extend McQuiggan, that's a few leaps, Your Honor. And I don't think McQuiggan or any of the case law from the United States Supreme Court or the jurisdiction of this court would support taking any exception to that level. Now, the defendant does cite to four cases from the Fourth Circuit. Pettiford, Gadsden, Maback, and Michelucci. They all brought the procedural default, right? Exactly, Your Honor. So, there are three, you know, statutorily created exceptions which we talked about. Subject matter, statute of limitations, and successive petitions. Procedural default is a court-created doctrine. Now, the Fourth Circuit has created an exception to that where you're actually innocent of your sentence. Now, we do argue that he's not even actually innocent of his sentence as under the Fourth Circuit specific exception there. One, you would have to show that he was factually innocent of the underlying conviction. Two, that that conviction was used to enhance him as a career offender or under another habitual offender provision. And three, that he suffered prejudice as a result. This is where the defendant talks about whether or not he's factually innocent of the crime at all. Again, I think any argument that he's factually innocent of the 1994 Florida conviction is speculative at best. Like I said, the more affidavit was included in 2001, the Florida court rejected that habeas motion. Then he included the same affidavit again in 2008 with a new affidavit from counsel about whether or not his plea was intelligent and voluntary. Then the Florida court vacated it. Any argument that this was a vacatur based on factual innocence is speculative. But you say that a vacatur based on factual innocence doesn't make any difference. But that's what you said. Well, I'm speaking right now to the actual innocence of sentence exception. I don't think that exception applies to this case. I think in this case, we're dealing with a state court vacatur. And under Johnson, I make the argument that he's not timely. Am I understanding your Honor's question correctly? I think I may have missed it. Under the second prong of the actual innocence of sentence exception in the Fourth Circuit, that's where we make the argument that this has only ever been extended in the career offender and the armed career criminal context. Except in Michelegunas, where they chose not to extend it. Because in that case, we were dealing with an enhancement to the defendant's base offense level. This is a similar situation in Michelegunas. Here we're dealing with one with an increase in the defendant's criminal history category. These aren't the types of situations that Michelegunas contemplated. The situations where the defendant is sentenced, his sentence is significantly enhanced based on him having a specific number of a specific type of predicate state court convictions. In an armed career criminal context, he's getting a heightened mandatory minimum. His base offense level is going to be higher. And he's getting a heightened criminal history category. Similarly, in the career offender under 4B1.1, it's affecting his criminal history category and his base offense level. This defendant was not sentenced as a recidivist. He was not sentenced. His sentence was not driven by his criminal history category. It was driven by the large quantity of drugs that he distributed into North Carolina. Your Honors, we argue that the defendant's motion is procedurally barred. And he cannot get around this procedurally barred. That there is no authority to extend any exception to the situation we're presented with today. Accordingly, we ask that the court affirm the district court. Seeing that there are no questions from the panel, thank you very much. All right, Ms. Miles. Thank you, Your Honors. First, with respect to the panel's questions on actual innocence of conviction versus sentence. The core fundamental tenet under both of those claims is that a defendant would be serving time in prison that is undeserved. And that is not in dispute in this case. Mr. Jones has two underlying state court vacators that would reduce his sentence. And therefore, he is prejudiced. Do you think that Congress would be without authority to impose a limitation on challenging an illegal sentence? Of course not, Your Honor. That would be within Congress's prerogative. It's within the rules. It's within the statute. And it's within the habeas. All of them establish deadlines for challenging a sentence that's too long. Yes, Your Honor. However, it is important to recognize that in McQuiggan, which dealt with 2244, that was also a statute. And in McQuiggan, the Supreme Court said that there was an equitable exception. In McQuiggan, the Supreme Court recognized it was a statute and that it was providing an exception to something Congress did. And it required actual innocence. They spent, I think, two or three times said, we do not want innocent people in jail. And that this demand for justice was enormous. You can make the same argument that an overstated sentence is also a demand for justice. But Congress addressed that separately and did impose deadlines on it. And the Supreme Court didn't address that issue. If we were to extend McQuiggan to sentencing errors, it would be a pretty bold Fourth Circuit to do that, right? Your Honor, the Fourth Circuit would be the first circuit to consider that. However, because the circuit has previously recognized actual innocence of sentence and recognized that the actual innocence of sentence flows directly from actual innocence jurisprudence and the power of the federal habeas courts in that respect. But we never use the actual innocence of sentence to violate a congressional statute deadline. In other words, the deadline under Rule 35 and 3582, whatever number that is, and the habeas, we've never barreled through one of those deadlines that Congress created based on sentencing issue. All we did is forgave procedural default. Yes, Your Honor. However, with respect to that, Sawyer recognized the exception with respect to second or successive petitions. However, if this court, excuse me, the statute of limitations. However, if this court were to restrict McQuiggan purely to actual innocence of conviction claims, in effect, no Sawyer-based claim... We wouldn't be restricting it. That's all it held. We would have to extend it. Your Honor, that decision was not before the Supreme Court, and so therefore there has been no... You're talking about the McQuiggan case. Yes, Your Honor. That's before the Supreme Court. They want us to extend it. We believe that the framework can be applied... Yes, the framework can be applied with respect to actual innocence of sentence because actual innocence of sentence has already been recognized and has been since 1994 in this court. Thank you. Thank you, Your Honor. I want to recognize that, Mr. Braga, you were court appointed, and that's really an important service to the court. And Ms. Mao, your service in connection with the program at the University of Virginia, you did an excellent job. Your client can be proud. We'll come down and greet you and proceed on to the next case. Thank you, Your Honor.
judges: Paul V. Niemeyer, Robert B. King, G. Steven Agee